**HANSEN v. CREEDON, Housing Expedi-
ter, Office of Housing Expediter.**

**No. 13447.**

Circuit Court of Appeals, Eighth Circuit.

Aug. 15, 1947.

Irving M. Gruber, of Washington, D. C., (William E. Remy, David London, Albert M. Dreyer, and J. J. Schalet, all of Washington, D. C., Isadore L. Kovitz, of Chicago, Ill., and Alex Dim, of St. Paul, Minn., on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The trial court awarded the Administrator, Office of Price Administration,[1] statutory damages of $7,720.50 and an injunction,[2] for violations by appellant of the Rent Regulation for Hotels and Rooming Houses,[3] issued under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq.

The damages awarded were in the amount of one and one-half times the overcharges found to have been made by appellant on rooms in the Woonsocket Hotel, at Minneapolis, Minnesota, from July 1, 1944, through April 30, 1945. The court found that there had been overcharges of $3,047.-25 on rooms having an experience rate during the base period of the Regulation, which rate was determinative of their ceiling price under section 4(a) of the Regulation, and that there had been overcharges of $2,099.75 on rooms having no experience rate or regular offering rate during the base period for the particular occupancy involved but as to which there were similar rooms in the hotel for which a certain rate was charged, which comparable rate the court held was determinative of the ceiling price on the rooms in question under section 4(c) of the Regulation.[4]

Appellant makes no attack upon the court's finding as to the overcharges of

O. A. Brecke, of Minneapolis, Minn., for appellant.

[1] The Administrator, Office of Temporary Controls, and later the Housing Expediter, Office of the Housing Expediter, were substituted in this court as appellee, by virtue of Executive Orders of succession to the functions here involved.

[2] See § 205(a) and (c) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(a) and (c).

[3] 8 Fed. Reg. 7334. See also 7 F.R. 8602; 8 F.R. 14676; 11 F.R. 13032, 13050.

[4] Rent Regulation for Hotels and Rooming Houses:

"Section 4. Maximum rents.—This section establishes separate maximum rents for different terms of occupancy (daily, weekly or monthly) and numbers of occupants of a particular room. Maximum rents for rooms in a hotel or rooming house (unless and until changed by the Administrator as provided in section 5) shall be:

"(a) Rented or regularly offered during maximum rent period.—For a room

$3,047.25 on the rooms which had an experience rate, except to object to the inclusion in the judgment of the overcharges on such rooms for the month of April 1945, in the sum of $356.50, because 30 days had not elapsed from the date of these overcharges when the action was brought. This contention will be later considered.

Appellant's principal attack is upon the court's finding as to the overcharges of $2,099.75 on the rooms which had no experience rate for the terms or number of occupants which are here involved, and for which the court used as a ceiling price the comparable rate of similar rooms in the hotel. His contention is that, while there were no experience rates for these rooms on the occupancies involved, they had all had regular offering rates during the base period on such occupancies, which were controlling under section 4(a) of the Regulation; that the court therefore had no right to use the comparable rates of similar rooms in the hotel as a rent ceiling for them under section 4(c) of the Regulation; and that in any event the court failed to apply the proper comparable rates because it did not recognize any differential charge for a plural occupancy.

Under section 4(a) of the Regulation, the rent ceiling on a room that had no experience rate for a particular term or number of occupants during the base period was the rent for which it was regularly offered for such a term or number of occupants during that period. Under section 4(c), if the room was being offered for such a term or number of occupants during the base period, but had no regular offering rate, the rent ceiling was the first rent after the base period for that term and number of occupants, "but not more than the maximum rent for similar rooms for the same term and number of occupants in the same hotel."

■ All of the rooms in question were admittedly regularly offered for rent during the base period, in the sense that they would have been rented for any of the terms or number of occupants involved as they might be vacant. Whether they had a regular offering rate necessarily was a question of fact for the trial court, whose finding we have no right to disturb in the present situation if there is substantial evidence to support it. Dumas v. King, 8 Cir., 157 F.2d 463, 465; Kincade v. Mikles, 8 Cir., 144 F.2d 784, 787. We think there is such evidence in the record.

■ Appellant argues in effect that the rack cards which he produced, together with the oral testimony which he offered as to his practices in operating the hotel, were required to be accepted by the court as establishing the existence of regular offering rates. The court made a finding that "The rack cards produced by the defendant as offering rates of the Woonsocket Hotel for the base period of January 31, 1942 to March, 1942, inclusive, are on their face insufficient as offering rates because of their incompleteness and lack of information as well as their numerous alterations, erasures, changes, correc-

---

rented or regularly offered for rent during the thirty days ending on the maximum rent date, the highest rent for each term or number of occupants for which the room was rented during that thirty-day period, or, if the room was not rented or was not rented for a particular term or number of occupants during that period, the rent for each term or number of occupants for which it was regularly offered during such period.

"(b) First rented or regularly offered after maximum rent period.—For a room neither rented nor regularly offered for rent during the thirty days ending on the maximum rent date, the highest rent for each term or number of occupants for which the room was rented during the thirty days commencing when it was first offered for rent after the maximum rent date; or, if the room was not rented or was not rented for a particular term or number of occupants during that period, the rent for each term or number of occupants for which it was regularly offered during such period.

"(c) First rent after maximum rent date where no maximum rent established under (a) or (b).—For a room rented for a particular term or number of occupants for which no maximum rent is established under paragraphs (a) or (b) of this section the first rent for the room after the maximum rent date for that term and number of occupants, but not more than the maximum rent for similar rooms for the same term and number of occupants in the same hotel or rooming house." * * *

tions, obliterations, and interlineations." There is no need to undertake a more detailed description of the rack cards here. They had none of the elements, by ordinary objective standards, of due-course business records. The inherent weakness from their condition was such that the court properly could refuse to accord them any probative force.

Appellant's brief says, "We are aware that these cards standing alone do not present an orderly and business-like record of the offering rates, but considered together with prevailing practices they were adequate." Even, however, if the rack cards in conjunction with appellant's alleged practices could have established offering rates, as he contends; the court was not required in the light of all the circumstances to accept at face value appellant's testimony as to what his practices had been. For example, while he testified that it was his practice to offer double occupancy for 50 cents more per day, $1 to $1.50 more per week, and $5 to $7 more per month, than single occupancy, there was evidence from which the court could find that, in view of the grade of the hotel, he had been in the habit, in considerable measure at least, of charging only a flat rate for a room regardless of the number of occupants. Thus, in addition to a demonstration from the records of the hotel that this had been done, there also was proof of an admission by appellant to the OPA investigator that "We didn't always know whether there was one or two so we came more or less to charging a flat rate * * *." And the force of appellant's contention that his rack cards and his subjective principles, as testified to by him, should be recognized as establishing offering rates could perhaps also be weighed in the light of what significance he himself had treated them as having in renting the rooms on which he made overcharges of $3,047.25 on the basis of their experience rate.[5]

Enough we think has been said to indicate that we must hold that there was a substantial basis in the evidence for the court's finding that appellant had not had any regular offering rates during the base period for the rooms in question, and to establish the court's right to use the comparable rates of similar rooms in the hotel as a rent ceiling under section 4(c) of the Regulation in determining the amount of the overcharges made. What we have said as to the evidence on appellant's alleged practice of making an additional charge for more than one occupant also should make unnecessary any further discussion of his contention that the court failed to apply the proper comparable rate because it did not recognize any differential charge for plural occupancy. It might be added that any charge for special services or facilities that appellant may have furnished (although the evidence can not be said to establish that any such special services or facilities were furnished for the rooms in question) has in any event been practicably covered, in that the comparable rate used as the rent ceiling was the highest rate which appellant had on any of the similar rooms.

Appellant's contention that it was error to include in the judgment damages for the overcharges which he made in ·the month of April 1945, because 30 days had not elapsed from the date of these overcharges when the action was brought, has been previously mentioned. These overcharges on the rooms where the experience rate constituted the rent ceiling amounted to $356.50 and on the rooms where the comparable rate became the rent ceiling to $310.50. The complaint in the action was filed on April 26, 1945. At that time apparently the OPA had not yet completed its audit of appellant's records. The complaint alleged for damage purposes that appellant had been making overcharges continuously since March 1, 1944, and prayed for judgment for three times the amount of the overcharges which appellant's books, records and files would establish.

· Under 50 U.S.C.A. Appendix, § 925(e), the guests against whom the April 1945 overcharges were made had 30 days from

---

[5] The experience rate was derived not from the rack cards but from the charge shown by appellant's records to have been made for the room by actual rentals during the base period.

the date of the occurrence of the violation to bring suit against appellant for damages, and the Administrator, of course, was not entitled to sue on account of such overcharges until the 30-day period had expired. If, therefore, appellant had made objection in the trial court to the inclusion of the April 1945 overcharges in the Administrator's action, the court would have had to exclude them from the complaint. But at no time did appellant make any such objection, either before the trial, or on the trial itself (which occurred almost a year after the action was commenced), or even in the motion which he filed to amend some of the court's findings and to make the judgment responsive to the requested amendments. He permitted evidence to be introduced at the trial on the overcharges, he made no objection to the court's consideration of the issue, and by his conduct he consented to a disposition of the matter in the final judgment.

His attempt here to raise the question for the first time comes too late. A party who permits a suit to be brought against him prematurely, who joins in a trial of the action after the right has ripened, and who submits the case for consideration and judgment on the merits— all without objection—will not be permitted to seek a reversal of the judgment for prematureness in the bringing of the action. And if the complaint here could be said not to have been originally intended to cover the April 1945 overcharges, Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, equally would prevent appellant from here seeking a reversal on that ground. Rule 15(b) provides in part that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings" and "failure * * * to amend [the pleadings] does not affect the result of the trial of these issues." Cf. Franklin v. Columbia Terminals Co., 8 Cir., 150 F.2d 667, 672.

Appellant's contention that the court ought not to have allowed any increased damages against him for his overcharges on the rooms that had no experience rate is sufficiently answered by Bowles v. Goebel, 8 Cir., 151 F.2d 671, 673, and Shearer v. Porter, 8 Cir., 155 F.2d 77, 81. The court found that appellant had failed to sustain his burden of proof that the violations were neither wilful nor the result of failure to take practicable precautions. In this situation the allowance of increased damages and the extent of their amount were matters for the discretion of the trial judge on the circumstances of the case. The court also clearly was entitled to grant an injunction on the evidence in the record.

Appellant has suggested several times in his brief that the Price Administrator ought as a matter of fairness to have proceeded under section 5(d) of the Regulation to establish rents for his rooms that had no experience rate. That section provides: "If the rent on the date determining the maximum rent, or any other fact necessary to the determination of the maximum rent, is in dispute between the landlord and the tenant, or is in doubt, or is not known, the Administrator on petition of the landlord filed within 30 days after the effective date of regulation, or at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact; or if the Administrator is unable to ascertain such fact he shall enter the order on the basis of the rent which he finds was generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date." The making of a determination and order under this section of the Regulation is discretionary with the Administrator, and appellant's suggestion or argument does not present a judicial question. Cf. Kalwar v. McKinnon, 1 Cir., 152 F.2d 263, 265. Besides, appellant apparently had not felt any need for such an administrative order, because he is not shown to have ever asked the Administrator to assist him in determining or settling his rates. And the registration statement which he had filed was not even a correct statement of the rents which he had been charging during the base period. Under the evidence, the court

legally was entitled to apply section 4(c) of the Regulation as determining his rent ceiling and to resolve the question of overcharges in relation to that ceiling.

The judgment is affirmed.