**MOTHER FRANCES HOSPITAL OF TYLER, TEXAS, Plaintiff,**

v.

**Donna SHALALA, PH.D.,**[1] **Secretary of Health and Human Services, et al., Defendants.**

**No. 6:92 CV 337.**

United States District Court, E.D. Texas, Tyler Division.

March 23, 1993.

---

1. The initial defendant in this civil action was ex-

Secretary of the Department of Health and Hu-

man Services, Louis W. Sullivan. The current Secretary is Donna Shalala. Under the Federal Rules of Civil Procedure, Rule 25(d), when a public official who is party to an action ceases to hold office, "the action does not abate and the officer's successor is automatically substituted as a party."

Dan M. Peterson, Washington, DC, Thomas M. Alleman, Tyler, TX, for plaintiff.

Steven MacArthur Mason, Asst. U.S. Atty., Tyler, TX, for defendants.

**2.** The Hospital borrowed new money in 1987, when interest rates had dropped, and placed it in an escrow account to pay the interest and principal on the old bonds, taken out in 1983, when interest rates were higher. Under this arrangement, in order to earn enough interest at the lower rates to continue making payments to bond holders, it is necessary to place a larger amount in the escrow account than the original principal. This caused the Hospital to sustain the loss at issue in this case.

## MEMORANDUM OPINION

JUSTICE, District Judge.

## I. Background and Procedural History

In 1987, plaintiff, Mother Frances Hospital ("Hospital"), retired its 1983 series bonds by issuing, in replacement, $64,000,000.00 in 1987 series bonds. The Hospital allegedly sustained a loss of $11,671,393.00,[2] and claimed $4,565,362.00 as the allowable amount to be reimbursed by the Department of Health and Human Services ("HHS"), through its program of Medicare. The Hospital argued that under General Accepted Accounting Principles ("GAAP"), it was due the full reimbursement in the year the loss was incurred, 1987. Blue Cross & Blue Shield, the intermediary for Medicare providers in Texas and for the Hospital, made audit adjustments that permitted only $824,727.00 as an allowable cost, reflecting amortization of the loss in future periods. The intermediary, rejecting application of GAAP, relied on Section 233 of the Provider Reimbursement Manual ("PRM 233"), published by the Secretary of HHS to aid in interpreting the Medicare regulatory provisions.

The Hospital, disagreeing with the intermediary's determination, obtained a hearing before the Medicare Provider Reimbursement Review Board ("PRRB"), in accordance with 42 U.S.C. § 1395oo. Reversing the decision of the intermediary, the PRRB found GAAP applicable, making the loss reimbursable in the year in which it was incurred, 1987. The Acting Administrator of the Health Care Financing Administration reversed the PRRB's decision and held that the loss must be amortized, and that the PRRB's reliance on GAAP was erroneous.[3] The Administrator, like the intermediary, found that PRM 233 was controlling. In compliance with 42 U.S.C. § 1395oo (f)(1), the Hospital sought

**3.** The Health Care Financing Administration ("HCFA"), pursuant to a delegation of authority from the Secretary of HHS, in accordance with 42 C.F.R. § 405.1875 et seq., is responsible for implementing and administering the Medicare Act. The HCFA, under this authority, may reverse, affirm, or modify the PRRB's decision on its own motion. The HCFA's determination represents the final decision of the Secretary, from which judicial review may be sought. 42 U.S.C. § 1395oo (f)(1).

judicial review of the final administrative decision of the Secretary to amortize the Hospital's loss.

This civil action was referred to the Honorable Harry W. McKee, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b), for proposed findings of fact, conclusions of law, and recommendations for the disposition of pending motions. The parties filed cross motions for summary judgment. The Magistrate Judge recommended that the Hospital's motion for summary judgment be granted, that the Secretary's motion be denied, and that the final decision of the Secretary to amortize the loss be reversed. In addition, the Magistrate Judge accepted the Hospital's claimed reimbursement costs, $4,563,362.00.

A district judge is required to conduct a *de novo* review of objections to the report and recommendation filed by the parties, in accordance with 28 U.S.C. § 636. The district judge may accept, reject, or modify the report and recommendation, and may receive further evidence or recommit the matter to the Magistrate Judge.

It is determined from such *de novo* review that the Secretary's position, that Medicare reimbursement for the Hospital's loss be amortized, is both a permissible and reasonable interpretation of the applicable statute and regulations. Hence, the Secretary's final decision to amortize the Medicare reimbursement for the loss on bond defeasance incurred by the Hospital should be approved and ordered reinstated.

**II. Standard of Review—Deference to the Agency's Interpretation**

 Where the determination at issue involves the interpretation of a statute, an agency's interpretation of a statute it administers should be upheld if it is based on a "permissible" construction of the language of the statute. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. et al.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Moreover, the agency's construction of a statutory scheme it administers need only be reasonable, and not the only interpretation or the one the court would have reached if it were initially faced with the question. *Udall v. Tullman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Marcello v. Bowen,* 803 F.2d 851, 855 (5th Cir.1986).

 The agency has the authority, either explicit or implicit, to elucidate a particular statute by issuing regulations. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782. Such regulations are to be given controlling weight unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. at 2782.

Under these well-settled principles of deference to an agency's interpretation of a statutory scheme it administers, the question before the Magistrate Judge was whether the Secretary's interpretation of 42 U.S.C. § 1395f(b), the statutory authority for allowing reimbursement of "reasonable costs" to health care providers, was reasonable. Two of the regulations promulgated to elucidate the statutory scheme, 42 C.F.R. §§ 413.9(b) and 413.20, are applicable to the point at issue, and these regulations must be given controlling weight, unless they are "arbitrary, capricious, or manifestly contrary to the statute."

**III. Analysis**

In analyzing the statute and its implementing regulations, the salient point for consideration by the Magistrate Judge, and by this court, is whether the Secretary must follow GAAP in determining when to reimburse the Hospital's refinancing loss, or whether the Secretary may follow PRM 233, requiring amortization. The issue respecting the amount of the loss was not properly before the Magistrate Judge.

The Hospital argues that 42 C.F.R. § 413.20 requires General Accepted Accounting Principles to be applied, making the loss reimbursable in the year in which it was incurred. In addition, the Hospital argues that if PRM 233 is applicable, calling for amortization, then PRM 233 is a substantive provision, demanding notice and comment before promulgation, neither present in this case. The Secretary, in opposition, argues that § 413.20 does not require GAAP for cost reimbursement, but only for the maintenance of reports and records by health care providers. In addition, the Secretary takes the

position that PRM 233 is an interpretive provision of its own regulation, specifically 42 C.F.R. § 413.9(b), not requiring notice and comment.

All parties agree that if GAAP applied, it was mandatory that the cost be claimed in the period in which the transaction took place, and, further, that the reimbursement for the full cost be paid within the same period.

### A. The Secretary is not Bound by GAAP in Determining When to Reimburse the Hospital's Refinancing Losses.

■ Title 42 U.S.C. § 1395f(b), the statutory authority for reimbursement of "reasonable costs" to health care providers, provides that a "reasonable cost" is the cost "actually incurred ... and ... determined in accordance with regulations establishing the method or methods to be used." 42 U.S.C. § 1395x(v)(1)(A). All parties agree that, under 42 C.F.R. § 413.5, the refinancing costs of the Hospital are reimbursable as "reasonable costs." The disagreement involves the *timing* of such reimbursement.

The central regulation at issue here, 42 C.F.R. § 413.20, provides that:

> The principles of cost reimbursement require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program. Standardized definitions, accounting statistics, and reporting practices that are widely accepted in the hospital and related fields are followed. Changes in these practices and systems will not be required in order to determine costs payable under the principles of reimbursement. Essentially the methods of determining costs payable under Medicare involve making use of data available from the institution's basis accounts, as usually maintained, to arrive at equitable and proper payment for services to beneficiaries.

42 C.F.R. § 413.20(a).

The title of § 413.20, "Financial data and reports," appears in Subpart B of the regulations, which is entitled "Accounting Records and Reports." Other provisions of the regulation concern the frequency with which providers are to supply cost reports, record-keeping requirements for new providers, and continuing provider record-keeping requirements. Subsection (e) permits program payments to be suspended if a provider does not maintain adequate records.

It is clear from the plain language of 42 C.F.R. § 413.20, that no provision in any way supports the Hospital's position that GAAP applies to cost reimbursement principles. Rather, the express language of § 413.20(a) indicates that GAAP only applies to the maintenance of financial records and statistical data by providers. In fact, the general rules of cost reimbursement are set forth in 42 C.F.R. § 413.5, which makes no reference to GAAP. Indeed, 42 C.F.R. § 413.5(b)(4) states that there should be "sufficient flexibility in the methods of reimbursement to be used...."

■ In addition, the Secretary publishes the Provider Reimbursement Manual ("PRM") to aid in the interpretation of regulations. While the PRM does not have the binding effect of law or regulation, it is "entitled to be given important significance." *Sun Towers v. Heckler,* 725 F.2d 315, 325 n. 16 (5th Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). PRM 233 explicitly addresses losses incurred through advance refunding and states that these losses should be amortized over the life of the refunded bonds. PRM 233.3 provides, in relevant part: "[t]he effect of [amortization] is to implicitly recognize any gain or loss incurred as the result of an advance refunding over the period from the date the refunding debt is issued to the date the holders of the refunded debt receive the principal payment, rather than immediately."

■ The Magistrate Judge rejected as illogical and unreasonable the Secretary's final decision to amortize the Hospital's loss. His report and recommendation stated:

> The Secretary is arguing that a provider's reimbursable costs will be determined under GAAP accounting, but actual reimbursement will take place according to another method. This is an unreasonable interpretation of the regulations. As reasonable costs must be calculated according to GAAP, it is only logical that the Secre-

tary will reimburse providers ·under that system as well.

(Report and Recommendation, p. 8). The Secretary objected that the report and recommendation misstated the HHS's position. The Secretary did not argue that GAAP should be applied to reimbursable costs and not to Medicare reimbursement, for that construction would clearly violate the Fifth Circuit's holding in *Sun Towers,* 725 F.2d at 329, *quoting American Medical Int'l., Inc. v. Secretary of Health, Education and Welfare,* 466 F.Supp. 605, 623 (D.D.C.1979), *aff'd,* 677 F.2d 118 (D.C.Cir.1981) ("[42 C.F.R. § 413.20] is not a regulation affecting the substantive provisions of the program as to what constitutes reimbursable costs."). The Secretary, instead, interprets 42 C.F.R. § 413.20 to mean that the provider, in the exercise of its discretion, may choose to maintain its *own* financial records according to GAAP. This data can then be used to determine the reasonable costs on which Medicare reimbursement is based. (Defendant's Objections, p. 5). The Magistrate Judge's determination that the Secretary's position was unreasonable, having rested on a misinterpretation of the Secretary's argument, must be rejected.

Moreover, the Magistrate Judge's conclusion that GAAP must be followed in determining when to pay Medicare reimbursement is contrary to the Fifth Circuit's reasoning in *Sun Towers.* 725 F.2d at 328. In *Sun Towers,* the district court found that the regulation in question required that GAAP be used in determining whether certain costs and returns on equity capital were allowable costs under Medicare. The Fifth Circuit reversed the district court's determination, holding that 42 C.F.R. § 413.20 "only provides that accepted accounting principles be used in uniform record-keeping, not in determining costs allowable under the Medicare Act," and also holding that "[t]he regulation is directed at the type ·of financial data and reports required of its providers; *it is not a regulation affecting the substantive provi-*

*sions of the program as to what constitutes reimbursable costs. " Id.* at 329 (emphasis supplied). Thus, although the report and recommendation is correct in noting that *Sun Towers* did not address the timing of reimbursement, the Fifth Circuit in *Sun Towers* upheld the Secretary's interpretation of § 413.20, that GAAP relates only to the type of financial data and reports required of providers. *Id.* at 329.

The report and recommendation cites with approval a case supporting the Hospital's position, *Ravenswood Hospital Medical Center v. Schweiker,* 622 F.Supp. 338 (D.C.Ill. 1985)[4], but it omits to mention a recent district court case which supports the Secretary's position, *Guernsey Memorial Hospital v. Sullivan,* 796 F.Supp. 283 (S.D.Ohio 1992), *appeal docketed,* No. 92–3563 (6th Cir. June 11, 1992) (argued March 2, 1993). The *Guernsey* court, explicitly considering the timing of Medicare reimbursement, held that 42 C.F.R. § 413.20 does not require that Medicare reimbursement be determined according to GAAP. *Id.* at 291. In referring to PRM 233, the *Guernsey* court found that the Secretary's method of amortization to reimburse a provider for the costs of advance refunding was reasonable. *Id.* Giving consideration to the Fifth Circuit's binding decision in *Sun Towers,* as well as to the recent district court decision, *Guernsey,* it is found that the Secretary's position is reasonable.

**B. Provider Reimbursement Manual Section 233**

**1. PRM 233 is Interpretive, Not Substantive**

■ The report and recommendation of the Magistrate Judge accepts the Hospital's position that PRM 233, the provision requiring amortization of the loss, is contrary to 42 C.F.R. § 413.20,. the regulation the Hospital alleges makes necessary reimbursement of the full loss in 1987. The report and recommendation found that GAAP was required under § 413.20, and also concluded that PRM 233 was a substantive provision, effecting a

---

4. In *Ravenswood,* the district court concluded that amortization of a loss due to advance refunding is not an appropriate method of reimbursement for refinancing losses. However, it is arguable that *Ravenswood* is not directly applicable here, since the court was concerned with inconsistencies resulting from the Secretary's treatment of these losses under PRM § 215.1, the predecessor to PRM § 233. Moreover, the court in *Ravenswood* nowhere held that 42 C.F.R. § 413.20 requires that GAAP be followed.

change in the rights of the parties, and thus void for lack of notice and public comment.

This finding must be rejected. Because it has been determined that GAAP does not apply to reimbursement of losses from refinancing, PRM 233 does not effect a change in the granting of substantive rights, and is therefore interpretive. *See Creighton Omaha Regional Health Care Corp. v. Bowen,* 822 F.2d 785, 791 (8th Cir.1987) (provisions of Provider Reimbursement Manual and amendments thereto are "interpretive rules," not subject to the rulemaking process.). Since it is interpretive in nature, PRM 233 falls within the exception to the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b)(3)(A).

### 2. PRM 233 is a Reasonable Interpretation of the Secretary's Own Regulations

■ The Secretary's interpretation of its own statutory scheme must be accorded proper deference, and must be accepted as correct if reasonable, as stated above. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. et al.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *Udall v. Tullman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Marcello v. Bowen,* 803 F.2d 851, 855 (5th Cir.1986). Regulations promulgated to clarify the statute must be given deference unless they are arbitrary and contrary to statutory language. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782.

The Secretary publishes the Provider Reimbursement Manual to aid in the interpretation of regulations. As previously noted, the PRM does not have the binding effect of law or regulation, but it is "entitled to be given important significance." *Sun Towers,* 725 F.2d at 325 n. 16. PRM 233 specifically applies to losses incurred through advance refunding and states that these losses should be amortized over the life of the refunded bonds. The Secretary contends that PRM 233 is interpretive of 42 C.F.R. § 413.9(b), which provides that the "reasonable costs" of reimbursement will be "determined in accor-

dance with an accepted method of cost apportionment to be the *actual cost of services furnished to beneficiaries during the year.*" (Emphasis added.) The Secretary insists that, although the "loss" reported on the Hospital's financial records is for 1987, the patients treated in 1987 were not the only beneficiaries of the refinancing transaction from which the loss stemmed. The loss reported under GAAP on the Hospital's financial statement in 1987 reflects only the fact that the Hospital borrowed funds in 1987 to pay off bonds purchased earlier at a higher interest rate. However, this "loss," incurred to build larger, newer facilities, was for the long term benefit of the Hospital and its patients, not merely those treated in 1987. Thus, the Secretary argues that this loss is correctly reimbursed over the life of the original debt.

Once again, the report and recommendation fails to accord proper deference to the Secretary's interpretation of HHS's own statutory scheme. It cannot properly be said that 42 C.F.R. § 413.9(b), as interpreted by PRM 233, is arbitrary or capricious.

### 3. PRM 233 Does Not Violate the Accrual Method of Accounting

■ The report and recommendation accepted the Hospital's argument that PRM 233's requirement of amortization would violate the Secretary's regulations requiring the use of the accrual basis of accounting. *See* 42 C.F.R. § 413.24(a). (Report and Recommendation, p. 10). Under the accrual basis of accounting,

revenue is reported in the period when it is collected, and expenses are reported in the period in which they are incurred, regardless of when they are paid.

42 C.F.R. § 413.24(b)(2). The report and recommendation asserts that amortization of the reported loss is contrary to accrual accounting, because the Hospital is no longer required to pay interest on the original bonds after they are defeased.

Amortization is not contrary to accrual accounting.[5] *See Spartanburg General Hospi-*

---

5. Although accrual accounting procedures contemplate the expensing of costs associated with items that provide no discernable future benefit, they also anticipate that, if any discernable future benefit exists, the costs will be capitalized and

matched incrementally with future revenue or deferred to future accounting periods. *See Spartanburg General Hospital v. Heckler,* 607 F.Supp. 635, 641 (D.S.C.1985) (affirming Secretary's decision to amortize certain costs associated with

*tal v. Heckler*, 607 F.Supp. 635, 641 (D.S.C. 1985); Financial Accounting Standards Board Statement of Concepts No. 6.[6] The concepts underlying accrual accounting include allocation of costs to future periods when the benefits of these costs will be enjoyed in the future. *Id.* In this instance, the benefits of the refinancing transaction that led to the Hospital's loss will be enjoyed in the future. It does not follow that, merely because the Hospital paid the interest on the original bond issue to the trustee in 1987, it must be compensated for this cost in 1987. As the Secretary points out in HHS's objections to the report and recommendation:

> [T]he loss due to the advance refinancing transaction is the sum of certain expenses incurred because of long term debt of the hospital. The benefit of the original debt, as well as that of the lower interest rate on the refunded debt, will be enjoyed by future patients as much as it is enjoyed by patients treated in 1987. Therefore, under the accrual method of accounting the loss is appropriately amortized over the period during which the benefits will accrue.

(Secretary's Objections, p. 12).

Because a future discernable benefit appears probable, amortization in this case does not violate the accrual method of accounting set forth in 42 C.F.R. § 413.24(a).

## IV. The Report and Recommendation Adopting the Hospital's Claimed Loss as $4,565,362.00 Must be Rejected

■ The Magistrate Judge found that the total loss due to the refinancing transaction was $11,671,393.00, and that the total reimbursement effect on Medicare would be $4,563,362.00, if these costs were reimbursed in 1987 (Report and Recommendation, p. 16).

The only issue before the Magistrate Judge, as already set forth, was whether the Secretary must follow GAAP in determining when to reimburse the Hospital's refinancing loss, or whether the Secretary may deviate from GAAP, and amortize reimbursement of the loss under PRM 233. The issue regarding the amount of the loss was not properly before the Magistrate Judge. Based on a *de novo* review, it is found that there is no support in the record for the Magistrate Judge's finding that these amounts are correct, or that the issue was ever administratively adjudicated. Moreover, the Secretary never stipulated to these amounts, and HHS's representatives, in fact, stated numerous times at the hearing on the motion for summary judgment before the Magistrate Judge that HHS did not agree that this amount was correct (See Hearing Transcript, pp. 5–9).

## V. Conclusion

Based on the foregoing analysis, the January 8, 1993, report and recommendation of the Magistrate Judge is rejected. The final decision of the Secretary of HHS to amortize the Medicare reimbursement for the loss on bond defeasance incurred by the plaintiff, Mother Frances Hospital, should be approved, confirmed, and reinstated. Furthermore, the report and recommendation of the Magistrate Judge finding $11,671,393.00 to be the total loss resulting from the refinancing transaction, and further finding $4,563,-362.00 to be the total reimbursement effect on Medicare, should be rejected. The amounts of the loss and reimbursement effect should be determined by the appropriate agency within the Department of Health and Human Services.

failed construction project); *Doctors Hospital, Inc. v. Califano,* 459 F.Supp. 201, 207–208 (D.D.C.1978) (affirming Secretary's decision to disallow certain interest payments on money borrowed to obtain a permit to build new hospital until new facility actually built, and then requiring amortization of interest).

**6.** This court may take judicial notice of the accrual method of accounting as a definitely ascertainable accounting method, capable of certain verification by resort to sources whose accuracy cannot reasonably be questioned. *See Marquardt Company v. United States,* 822 F.2d 1573, 1578

(Fed.Cir.1987) (taking judicial notice of "current accounting texts"); *Decker v. Korth* 219 F.2d 732 (10th Cir.), *cert. denied sub nom. Mullett v. Korth,* 350 U.S. 830, 76 S.Ct. 61, 100 L.Ed. 740 (1955) (same). *See also* Fed. Rule of Evidence 201(b)(2); *McCormick on Evidence* §§ 328, 330 (1984); 9 Wigmore, *Evidence* § 2568(a) (1981) (a judge "is entitled to aid himself in reaching a decision [of the appropriateness of judicial notice], by consulting *any sources* of information that serve the purpose—official records, encyclopedias, any books or articles, or indeed any source whatever that suffices to satisfy his mind in making a ruling.") (original emphasis).

A final judgment conforming to this memorandum opinion shall be entered contemporaneously herewith.