**CHARLOTTE MEMORIAL HOSPITAL AND MEDICAL CENTER, INC.,** Plaintiff–Appellee,

v.

**Otis R. BOWEN, Secretary of Health and Human Services,** Defendant–Appellant.

No. 87–3745.

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1988.

Decided Sept. 15, 1988.

Michael E. Robinson (James M. Spears, Acting Asst. Atty. Gen., Washington, D.C., Thomas J. Ashcraft, U.S. Atty., Asheville, N.C., Anthony J. Steinmeyer, Atty., Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, D.C., on brief), for defendant-appellant.

Robert E. Mazer (Leonard C. Homer, Ober, Kaler, Grimes & Shriver, Baltimore, Md., Everett J. Bowman, Robinson, Brad-

shaw & Hinson, P.A., Charlotte, N.C., on brief), for plaintiff-appellee.

Before HALL and WILKINSON, Circuit Judges, and GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

GORDON, Senior District Judge:

■ Secretary of Health and Human Services ("Secretary") appeals the district court's decision granting Medicare reimbursement to Charlotte Memorial Hospital and Medical Center, Inc., ("Memorial Hospital") for the cost years 1979–81. Memorial Hospital sought reimbursement for the portion of doctors' salaries that the hospital, under its deferred compensation plan, placed in certificates of deposit and savings accounts as a retirement fund for doctors participating in the plan. While recognizing that Memorial Hospital deferred the actual delivery of the salaries to the doctors and that doctors who failed to adhere to certain covenants might forfeit rights to receive the deferred salaries, we nonetheless conclude that, under the requisite accrual accounting method, Memorial Hospital "incurred" a reimbursable expense when the doctors rendered services and Memorial Hospital invested a portion of the doctors' salaries in separate accounts on the doctors' behalf. Accordingly, we affirm the district court's decision to grant reimbursement.

## I.

For the 1979–81 cost years, Memorial Hospital provided its doctors with an "Executive Compensation Plan" which enabled doctors to defer recognition of taxable income. Under the plan, doctors elected not to receive a part of their salary in exchange for Memorial Hospital's promise to set aside the amount of the reduction for retirement or death. Memorial Hospital placed the deferred salary in savings accounts or certificates of deposit under its

own name; these investments were not fully protected from the Memorial Hospital's general creditors. As a term of the plan, doctors agreed to "render such advisory and consulting service as [Memorial] Hospital may reasonably request" and "refrain from performing services of any kind, as an employee, to or for any other [h]ospital without the written consent of [Memorial] Hospital." Doctors failing to honor these covenants forfeited their rights "to receive any further payments from the amounts set up as a credit." At present, however, no doctor has actually forfeited the right to receive the retirement money, despite evidence that some doctors have breached the covenants.

Memorial Hospital applied to the Medicare Intermediary[1], Blue Cross and Blue Shield of North Carolina ("Blue Cross"), for reimbursement of the funds set aside under the plan during the 1979–81 cost years. Blue Cross disallowed the claim, reasoning that the plan did not comply with the Secretary's regulatory interpretations on obtaining reimbursement for the funding of a deferred compensation plan, Section 2140 of the Provider Reimbursement Manual ("PRM") and Intermediary Letter ("IL") No. 75–34. Specifically, Blue Cross determined that, under PRM § 2140 and IL 75–34, the savings accounts and certificate of deposits Memorial Hospital used to implement the retirement plan are not "acceptable type fund[s]", and that, accordingly, Memorial Hospital cannot be reimbursed until the doctors actually receive the money.

The Provider Reimbursement Review Board affirmed Blue Cross' decision to deny reimbursement. The district court, however, reversed. The district court determined that the Secretary's regulatory interpretations are inconsistent with 42 C.F.R. § 413.24 (1987), which requires the application of accrual accounting and indicates that a hospital should receive reimbursement when it "incurs" a cost. The district court concluded that the Secretary's regulatory interpretations on de-

---

**1.** Payment to Medicare providers is commonly facilitated by private organizations, such as Blue Cross, which act as fiscal intermediaries under contracts with the Secretary. 42 U.S.C. § 1395h.

ferred compensation plans "cannot be used to deny the hospital ... reimbursement for costs it has incurred in the form of earned salaries." 665 F.Supp. 455.

On appeal, the Secretary contends that Memorial Hospital did not "incur" a cost merely by placing the salary reductions "in various savings accounts and certificates of deposit and giving participating employees nothing more than a contingent, unsecured promise to pay benefits sometime in the future." The Secretary further contends that its regulatory interpretations, PRM § 2140 and IL 75–34, are consistent with accrual accounting, since the interpretations only require a hospital to place the deferred salary in the hands of a trustee or custodian, or in some other "acceptable type fund", before reimbursement is warranted. In this regard, the Secretary notes that its regulatory interpretations track the Internal Revenue Service's version of accrual accounting as applied to deferred compensation plans. While admitting that its regulatory interpretations depart from "Generally Accepted Accounting Principles" ("GAAP"), the Secretary ultimately contends that the deviation is warranted because, with respect to deferred compensation plans, "GAAP practices do not accurately reflect the cost of patient care, as opposed to the cost of running a business." Memorial Hospital, in response, contends that the Secretary's regulatory interpretations are inconsistent with the controlling regulation, 42 C.F.R. § 413.24, which requires Medicare to reimburse providers for medical costs when such costs are "incurred."

## II.

This case raises a financial "timing" question under Medicare regulation 42 C.F.R. § 413.24: does a hospital "incur" a reimbursable cost for services rendered by hospital's doctors when the hospital places the compensation in savings accounts or certificates of deposit as a retirement fund for doctors, with such fund recorded in the hospital's name, subject to the hospital's general creditors, and forfeitable by doctors for, without permission, breaching covenants not to compete or failing to, upon request, render consulting services.

The Medicare Act states that Medicare providers, such as Memorial Hospital, are reimbursed the lesser of their charges or their reasonable costs incurred in providing covered services to Medicare beneficiaries. 42 U.S.C. § 1395f(b) (1987). The Act defines the term "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A) (1987). The Act requires the Secretary to promulgate regulations to interpret "reasonable cost" and, in so doing, "to consider the principles applied by the national organizations." *Id.*

■ Accordingly, the Secretary has promulgated 42 C.F.R. § 413.24, which adopts accrual accounting to determine reimbursement and requires providers to submit adequate documentation of their Medicare costs:

> Providers receiving payment on the basis of reimbursable cost must provide adequate cost data. This data must be based on their financial and statistical records which must be capable of verification by qualified auditors. The cost data must be based on an approved method of cost finding and on the *accrual basis of accounting....* Under the accrual basis of accounting, revenue is reported in the period when it is earned, regardless of when it is collected, and expenses are reported in the period in which they are *incurred, regardless of when they are paid.*

42 C.F.R. §§ 413.24(a), 413.24(b)(2) (emphasis added). By contrasting the word "incurred" with actually "paid", Section 413.-24 stresses that, in deciding reimbursement, the creation of a debt, and not the payment of such debt, is determinative. A hospital thus accrues a reimbursable cost for doctors' salaries when the hospital incurs a debt to the doctors for services rendered.

■ GAAP provide the guiding light for determining when, under 42 C.F.R. § 413.24, a hospital incurs a reimbursable debt to doctors for services recompensed under the hospital's deferred compensation

plan. *Villa View Community Hospital, Inc. v. Heckler,* 720 F.2d 1086, 1093 n. 18 (9th Cir.1983) ("costs shall normally be reimbursed in accordance with generally accepted accounting principles"). First of all, the Medicare Act directs the Secretary to consider the GAAP when promulgating regulations on cost reimbursement. 42 U.S.C. § 1395x(v)(1)(A) (1987). *See* 42 CFR § 405.406(a) (1979) ("Standarized definitions ... widely followed in the hospital and related fields are followed"). Furthermore, a number of cases indicate that the Secretary must follow GAAP in determining cost reimbursement unless the Secretary promulgates a *regulation* delineating a different accounting practice. *Villa View,* 720 F.2d at n. 18; *National Medical Enterprises, Inc. v. Bowen,* 662 F.Supp. 476, 481 (C.D.Cal.1987). *But cf. Sun Towers, Inc. v. Heckler,* 725 F.2d 315, 328–29 (5th Cir.1984) (GAAP apply only to "record-keeping, not in determining costs allowable under the Medicare Act"); 41 Fed.Reg. 46292 (Oct. 20, 1976) (GAAP applicable to Medicare cost determinations "only when a cost situation is not covered by [medicare regulations] or the *Provider Reimbursement Manual*") (emphasis added). Finally, GAAP's position on deferred compensation plans comports with Section 413.24's emphasis on incurring, versus paying, a debt.

GAAP apply the accrual method of accounting to deferred compensations plans, allowing an employer to take a cost deduction when, on account of services rendered by an employee, the employer incurs an obligation under the plan to set aside salary reductions into a retirement fund. GAAP, however, focus on the "reality" of the plan and will disallow a current cost deduction if the money is really set aside as compensation for future services:

> [D]eferred compensation contracts should be accounted for individually on an accrual basis. Such contracts customarily include certain requirements such as continued employment for a specified period and availability for consulting services and agreements not to compete after retirement, which, if not complied with, remove the employer's obligations for future payments. *The estimated amounts to be paid under each contract should be accrued in a systematic and rational manner over the period of active employment from the time the contract is entered into, unless it is evident that future services expected to be received by the employer are commensurate with the payments or a portion of the payments to be made.*

APB Opinion No. 8 (emphasis added). As applied to Medicare reimbursement for a hospital's deferred compensation plan, the GAAP approach allows reimbursement when the hospital incurs an obligation to set aside compensation under the plan, provided that the compensation is, in reality, for services rendered and not for services to be rendered. In the end, the GAAP approach would make Medicare reimbursement commensurate with the real and present debt a hospital incurs for services the hospital's doctors render during a reporting period.

### III.

Despite that the Medicare Act favors application of the GAAP, that the case law indicates that the GAAP approach is normally controlling in determining cost reimbursement, and that the GAAP approach to deferred compensation plans captures the tenor of the applicable regulation (Section 413.24), the Secretary has nonetheless prescribed regulatory interpretations which radically depart from the GAAP approach to deferred compensation plans. In pertinent part, PRM § 2140.2 provides:

> Provider contributions for the benefit of employees under a deferred compensation plan are reimbursable *when,* and to the extent that, such costs are actually incurred *and met* by the provider.... As a condition for provider reimbursement, deferred compensation plans must be *funded.* Provider payments under unfunded deferred compensation plans will be considered as an allowable cost only when *actually paid* to the participating employee and only to the extent considered reasonable....

(emphasis added). Under PRM § 2140.3(B), a "funded plan is one in which contributions are systematically made as a specific provision of the plan to a funding

agency for the purpose of meeting retirement benefits." "[A] funding agency is either a trustee, an insurance company, or a custodial bank account which provides for the accumulation of assets to be used for the payment of benefits under the deferred compensation plan."

The other pertinent regulatory interpretation is IL 75–34, which expands the types of "acceptable" funds in which the deferred compensation may be paid. To offset any increased risk that a hospital will be overreimbursed, IL 75–34 requires that the hospital agree to return to the Medicare program any reimbursement for deferred compensation that an employee forfeits the right to receive. Specifically, Intermediary Letter No. 75–34 provides:

> The Medicare program will recognize ... the deferral of a portion of salary to be used to pay the contributions to an acceptable type of annuity or life insurance policy or for deposit in an acceptable type fund. Policies or funds of this type usually designate the provider as beneficiary until the conditions for payment of the withheld salary ... are met. If, however, the conditions for payment ... are not met, balance will revert to the provider. Therefore, to protect the interest of the program ..., providers are required to execute an agreement which provides that contributions previously allowed in reimbursable cost which are not paid to the participant ... and which would be retained by the providers must be refunded to the health insurance program.[2]

Thus, to incur a reimbursable cost under the regulatory interpretations, a hospital must establish that the employee rendered the services, the hospital set aside the deferred compensation, and the hospital placed the compensation in the possession of a trustee or custodian, or in some other "acceptable type fund". A hospital failing to satisfy these conditions will not be reimbursed until the salary reductions are actually paid to the employee.

Clearly, the Secretary's approach to deferred compensation plans is more exacting, in terms of the requirements of reimbursement, than the standard notion of accrual accounting envisioned by Section 413.24 and embodied in the GAAP. The Secretary's approach emphasives formalism, whereas the GAAP approach emphasizes realism. That is, the Secretary's approach focuses on when the hospital places the compensation in a particular type fund, or actually delivers the money to the employee, whereas the GAAP approach focuses on when a hospital incurs an obligation to pay for services rendered.

IV.

■ Even if the Secretary, in the absence of an enabling regulation, is authorized to prescribe regulatory interpretations that conflict with GAAP, a proposition we do not decide today, the Secretary would be at the very limit of his authority in doing so. Accordingly, such interpretations would be subject to greater scrutiny than interpretations which are consistent with GAAP because, unlike when promulgating a regulation, the Secretary does not have to comply with the Administrative Procedure Act when prescribing a regulatory interpretation. 5 U.S.C. §§ 701–706. The focus of this scrutiny is whether, with respect to the type of medical cost at issue, the departure from GAAP is supported by a showing that GAAP "do not accurately reflect the cost of patient care, as opposed to the cost of running a business." *Villa View*, 720 F.2d at n. 18.

The Secretary maintains that, in terms of reimbursement for payments made under deferred compensation plans, the GAAP approach does not accurately reflect the cost of patient care. In this regard, the Secretary contends that the forfeiture provisions in such plans create the risk that a hospital will never have to actually pay the doctors' salaries. Accordingly, the Secretary contends that the hospital could be reimbursed under the GAAP approach for a cost it may not actually sustain, creating a risk that reimbursement will not "accurately reflect the cost of patient care." Relying on this argument, the Secretary has prescribed regulatory interpretations which depart from the GAAP approach.

---

**2.** In the instant case, Blue Cross and the Provider Reimbursement Board rejected Memorial Hospital's attempt to execute an agreement pursuant to IL 75–34.

The Secretary, in addition, notes that its interpretations track the I.R.S.'s accounting of deferred compensation plans. *See* 26 U.S.C. § 404(a)(5), Rev.Rul. 69–650, 1969–2 C.B. 106–07. We determine, however, that the GAAP approach accurately reflects the cost of patient care and, accordingly, overrides the Secretary's interpretations.

The core of the GAAP approach to deferred compensation plans is that, during each reporting period, cost reimbursements should rationally coincide with the real debt the employer incurs for the services rendered. An employee's rendition of services triggers a present obligation on the part of the employer to pay money on behalf of the employee. The fact that an employee elects to defer the actual receipt of the money relates to the *manner* of payment and, unless the money set aside is really compensation for future services, does not detract from the rational perception that the employer has incurred liability for services rendered.

Furthermore, to deny a hospital reimbursement for money presently set aside would disrupt the accurate matching between real costs and reimbursements. That is, costs would exceed reimbursements. The hospital would face a financial strain.

█ Finally, the Secretary's concern that an employee's forfeiture would disrupt the accurate matching between costs and reimbursements is overrated. First of all, a forfeiture has yet to occur under Memorial Hospital's plan. Furthermore, even if a forfeiture were to occur, it would not be injurious to the Medicare program. A forfeiture results in an overreimbursement to the hospital at the *employee's* expense, not at the expense of Medicare. The employee renders services for which, by virtue of the forfeiture, he is not paid. The employee thus bears the expense of the forfeiture. The Medicare program, in contrast, is not harmed by the forfeiture. Medicare only pays for the reasonable value of the servic-

es provided. The mechanism for assuring that Medicare only pays a reasonable price for services provided is the intermediary's cost-allowance investigation. Once a hospital's employee has provided services to a Medicare patient, the intermediary has ascertained the reasonable value of the services, and Medicare program has reimbursed the hospital in accordance with the intermediary's investigation, the primary aim of the Medicare program has been accomplished. The fact that an employee subsequently forfeits deferred salary back to the hospital does not alter the fact that the Medicare program has paid a reasonable price for services rendered.[3]

In conclusion, the GAAP approach accurately reflects the cost of patient care and, accordingly, overrides the Secretary's regulatory interpretations relating to reimbursement for payments under a deferred compensation plan.

## V.

Having struck down the Secretary's interpretations, the court applies the GAAP approach to Memorial Hospital's deferred compensation plan to determine whether reimbursement is warranted for salary reductions invested by Memorial Hospital on behalf of doctors participating in the plan. The only question under the GAAP approach is whether Memorial Hospital incurred a present debt to the doctors for services rendered, as contrasted with services *to be rendered.* By actually setting aside the deferred compensation, in segregated accounts, on the doctors' behalf, Memorial Hospital provided convincing evidence that it incurred a debt for services already rendered. Additionally, the Secretary has not argued that the money set aside is, in reality, compensation for future services. In actuality, the plan sets aside "salary reduction"—i.e., money the doctors have already earned. Accordingly, we conclude that, under the GAAP approach, Memorial Hospital is entitled to the requested reimbursement.

---

3. A forfeiture does place the hospital in the temporary position of having received reimbursement for a cost it never had to actually pay. The hospital must, of course, deduct this overreimbursement from its next reimburse-ment application. As such, the forfeiture ultimately inures to the benefit of the Medicare program, which receives services for which it does not actually pay.

## VI.

The Secretary's regulatory interpretations covering reimbursement for payments pursuant to deferred compensation plans, PRM § 2140 and IL 75–34, cut against the tenor of the applicable regulation, 42 C.F.R. § 413.24. The interpretations, in addition, conflict with the GAAP approach. The Court therefore sets these interpretations aside and applies the GAAP approach to the instant case. Under the GAAP approach, Memorial Hospital incurred a reimbursable cost when the doctors rendered services and Memorial Hospital invested a portion of the doctors' salaries in separate accounts on the doctors' behalf. The district court thus properly awarded reimbursement to Memorial Hospital.

AFFIRMED.