United States Court of Appeals,

Fifth Circuit.

No. 93-4388.

MOTHER FRANCES HOSPITAL OF TYLER, TEXAS, Plaintiff-Appellant,

v.

Donna E. SHALALA, in her official capacity as Secretary of the Department of Health and Human Services and William Toby, Jr., in his official capacity as Acting Administrator of the Health Care Financing Administration, Defendants-Appellees.

March 3, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before JOHNSON, GARWOOD, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

The dispute in this case concerns the timing of Medicare reimbursement payments for costs incurred by provider hospitals under the Medicare Program. The particular costs at issue herein stem from an "advance refunding" transaction conducted by Mother Frances Hospital of Tyler, Texas (the "Hospital") in 1987. In that transaction, the Hospital incurred "defeasance" costs when it refunded an old series of bonds ahead of schedule in order to obtain new financing. All parties agree that these costs are reimbursable. The only issue that is contested is when and how this reimbursement is to be made. The Hospital maintains that such a loss is reimbursable immediately in a lump sum. By contrast, the Secretary of Health and Human Services (the "Secretary") contends that reimbursement should be amortized over the life of the old bonds. The district court ruled in favor of the Secretary. We REVERSE.

I.

FACTS AND PROCEDURAL HISTORY

In 1987, the Hospital borrowed money by issuing a new series of bonds. Most of the proceeds of this 1987 bond issue were used in an "advance refunding" transaction to refinance an earlier, 1983 bond issue. In this transaction, the Hospital placed the funds from the new bond issue into an irrevocable trust account under the direction of an independent trustee. The trustee invested

this money in U.S. Treasury obligations at an interest rate sufficient to pay the principal and interest of the old bonds as they came due. By means of this transaction, the Hospital was able to transfer its legal liability for the 1983 bonds to the trustee. Thus, the Hospital's liability for the bonds was "defeased."

As a result of this transaction, the Hospital incurred a loss.[1] This loss occurred because in order to create a sufficient fund in the trust to service the old bonds, the Hospital had to borrow a greater principal amount in the new bond issue.[2] Thus, after the 1987 transaction, the Hospital had a greater debt.[3]

Acting in accordance with Generally Accepted Accounting Principles (GAAP)[4], as is required by 42 C.F.R. § 413.20, the Hospital sought reimbursement for this entire loss in 1987. This request was denied, though, by the "fiscal intermediary"[5] to which such requests are initially routed. Instead, the intermediary allowed only a portion of this loss in 1987 and sought to space out the remaining reimbursement by amortizing it over the life of the old bonds. The Hospital appealed this decision

---

[1]This loss amounted to in excess of $11 million of which Medicare will reimburse approximately $4 million.

[2]Also added to this loss were certain up-front transactional costs the Hospital incurred in this transaction.

[3]Even though this transaction would result in a greater debt for the Hospital, it still made economic sense because, owing to lower interest rates, the new financing could be obtained on more favorable terms than the old financing. Thus, in reality, the Hospital would end up with a net economic gain because of reduced interest expense.

[4]GAAP consists of the three official publications of the American Institute of Certified Public Accountants (AICPA). These publications are the Accounting Principles Board Opinions, the Financial Accounting Standards Board statements, and the Accounting Research Bulletins. *See HCA Health Services of Midwest, Inc. v. Bowen,* 869 F.2d 1179, 1181 n. 3 (9th Cir.1989). In 1972, the Accounting Principles Board issued APB Opinion 26 which is entitled "Early Extinguishment of Debt." This opinion states that "[a] difference between the reacquisition price and the net carrying amount of the extinguished debt should be recognized currently in income of the period of extinguishment as losses or gains and identified as a separate item.... Gains and losses should not be amortized to future periods." Opinion 26, ¶ 20.

[5]The Medicare program provides for the payment of inpatient hospital and related post-institutional care for eligible individuals. These medical services are rendered by provider hospitals which participate in the Medicare program by entering into a "provider agreement" with the Secretary. 42 U.S.C. §§ 1395x(u), 1395cc. The Secretary then reimburses those provider hospitals through a "fiscal intermediary." 42 U.S.C. §§ 1395g, 1395h. In this case, the fiscal intermediary was Blue Shield of Texas, Inc.

to the Provider Reimbursement Review Board, a body established by the Secretary pursuant to 42 U.S.C. § 1395*oo* to hear these appeals. Finding that the regulations implementing the Medicare program provided for the use of GAAP in the absence of specific regulations to the contrary, the Board reversed the decision of the intermediary and issued a decision calling for full reimbursement in 1987.

The Board's decision was, in turn, reviewed by the Administrator of the Health Care Finance Administration. In making his decision, the Administrator relied on a policy announced in section 233 of the agency's Provider Reimbursement Manual (PRM) calling for amortization of advance refunding costs. Accordingly, the Administrator reversed the decision of the Board. Under 42 C.F.R. § 405.1875, this decision represented the final decision of the Secretary.

From this decision, the Hospital appealed to the district court where arguments were heard before a magistrate judge. The magistrate judge issued a Report and Recommendation in favor of the Hospital finding that section 233 was no more than a manual provision without the force and effect of law and thus was ineffective to change the meaning of the governing regulations, 42 C.F.R. § 413.20(a) and 413.24(a) and (b)(2), which call for the use of GAAP. This recommendation was rejected by the district judge, however, who found that section 233 was merely interpretive of the regulations and was therefore valid. Hence, the district court granted summary judgment for the Secretary, 818 F.Supp. 990. The Hospital timely appeals from this decision.

## II.

## DISCUSSION

Under the Medicare statute, the Secretary must reimburse provider hospitals for the reasonable costs of services rendered to eligible Medicare beneficiaries. The calculation of these reasonable costs "shall be determined in accordance with regulations establishing the method or methods to be used...." 42 U.S.C. § 1395x(v). Moreover, "[i]n prescribing the regulations, the Secretary shall consider, among other things, the principles generally applied by national organizations...." *Id.* These "national organizations" utilize GAAP.

This statute only states that the Secretary must "consider" GAAP in making regulations. It

does not say that she *must* pass regulations adopting GAAP. However, under 42 C.F.R. § 413 *et seq.,* entitled "Principles of Reasonable Cost Reimbursement," she appears to have done so. Under section 413.20(a), the regulations state that

> [t]he principles of cost reimbursement require that providers maintain sufficient financial records and statistical data for proper determination of costs payable under the program. Standardized definitions, accounting, statistics, and reporting practices that are widely accepted in the hospital and related fields *are followed* (emphasis added).

Moreover, section 413.24(a) states that "[t]he cost data *must* be based on an approved method of cost finding and on the accrual basis of accounting." Lastly, section 413.24(b)(2) instructs that

> [u]nder the accrual basis of accounting, revenue is reported in the period when it is earned, regardless of when it is collected, *and expenses are reported in the period in which they are incurred, regardless of when they are paid* (emphasis added).

In light of GAAP, the manifest conclusion from reading these regulations is that the Hospital was entitled to full reimbursement for this advance refunding loss in 1987.

Nevertheless, the Secretary seeks to avoid this result. She argues that the regulations merely provide for GAAP with respect to a hospital's *reporting* of its costs and do not compel a result with respect to the timing of cost *reimbursement.* Instead, she maintains that the timing of cost reimbursement in advance refunding transactions should be governed by PRM § 233. This provision speaks directly to advance refunding transactions and, contrary to GAAP, clearly provides for amortization of the loss.[6]

This argument by the Secretary has not fared well in the federal courts. Aside from the decision by the district court herein, every district court to have addressed the issue of the timing of reimbursement for an advance refunding loss has held, consistent with GAAP and contrary to the Secretary's argument, that this loss is immediately reimbursable.[7] Further, this issue was thoroughly

---

[6]Specifically, this section instructs that:

> When a provider defeases or repurchases debt incurred for necessary patient care through an advance refunding ... [u]namortized discounts or premiums (reduction of debt cancellation costs) and debt issue costs of the refunded debt must be amortized over the period from the issue date of the refunding debt to the date the holders of the refunded debt will receive the principal payment ..."

[7]*Graham Hospital Ass'n. v. Sullivan,* 832 F.Supp. 1235, 145 (N.D.Ill.1993); *Baptist Hospital East v. Sullivan,* 767 F.Supp. 139 (W.D.Ky.1991); *Mercy Hospital v. Sullivan,* Civil No. 90-

discussed and the Secretary's arguments were rejected by the Sixth Circuit in *Guernsey Memorial Hosp. v. Secretary of Health and Human Services*[8], 996 F.2d 830 (6th Cir.1993).

In *Guernsey,* a case on all fours with the case *sub judice,* the Sixth Circuit determined that the language and structure of the Medicare regulations unambiguously provide that reimbursement will be made on the basis indicated by GAAP. *Id.* at 835. Specifically, the court found that

> [w]ere it not for § 233 of the Provider Reimbursement Manual, any fair minded person reading the regulations in the light of generally accepted accounting principles would have to conclude that [the hospital] was entitled to reimbursement for its advance refunding costs in the year in which, under GAAP, the costs were deemed to have been incurred.

*Id.* at 834.

As to section 233, the *Guernsey* court concluded that it was invalid. *Id.* at 835. This is because issuance of the Provider Reimbursement Manual was not preceded by the formal rulemaking requirements of 5 U.S.C. § 553[9] and thus it does not carry the force and effect of law or regulation. *National Medical Enterprises v. Bowen,* 851 F.2d 291, 293 (9th Cir.1988). Lacking these formal requisites, section 233 could only be valid if it were an "interpretive" rule as opposed to a "substantive" rule.[10] *See* 5 U.S.C. § 553(b)(A).

Accordingly, the Secretary argued in *Guernsey,* as she argues herein, that section 233 merely interprets the regulations. The *Guernsey* court, however, disagreed. It found that as opposed to merely interpreting existing regulations, section 233 impermissibly changed the meaning of the properly promulgated regulations. *Id.* at 835; *See also Graham,* 832 F.Supp. at 1243. Hence, the

---

0024 P, 1991 WL 104090 (D.Me. April 25, 1991); *Ravenswood Hospital Medical Ctr. v. Schweiker,* 622 F.Supp. 338 (N.D.Ill.1985); *Methodist-Evangelical Hospital, Inc. v. Shalala,* Civil No. 92-2887-LFO. 1993 WL 548830 (D.D.C. Dec. 22, 1993); *Grant Medical Center v. Shalala,* Civil No. 93-0470-LFO, 1993 WL 548830 (D.D.C. Dec. 22, 1993).

[8]The district court in the *Guernsey* case had ruled in favor of the Secretary, but that decision was reversed by the Sixth Circuit.

[9]These requirements include advance notice of the terms or substance of a proposed rule under § 553(b) and an opportunity for interested persons to comment through the submission of written data, views or argument under § 553(c).

[10]Interpretive rules clarify or explain existing law or regulations; substantive rules grant rights, impose obligations or produce other significant effects on private interests. *American Hospital Association v. Bowen,* 834 F.2d 1037, 1045 (D.C.Cir.1987).

*Guernsey* court found that section 233 worked a substantive change in the regulations and was thus an invalid attempt to make a substantive rule without the formalities of the Administrative Procedures Act.[11]  *Guernsey,* 996 F.2d at 832.

We agree with the reasoning of *Guernsey* and adopt its holding that the Medicare regulations provide for the use of GAAP in determining the timing of Medicare reimbursement in advance refunding transactions and that section 233, which provides to the contrary, is an invalid attempt to promulgate a substantive rule without complying with the rulemaking formalities.  Moreover, we see nothing contrary to this holding in our decision in *Sun Towers, Inc. v. Heckler,* 725 F.2d 315 (5th Cir.), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

In *Sun Towers,* this Court was called on to decide whether certain costs were allowable under the Medicare program.  Among these costs were "stock maintenance costs."[12]  *Id.* at 326.  The Secretary disallowed reimbursement for these costs finding that they were only tangentially related to the care of Medicare beneficiaries.[13]  The district court, however, reversed the Secretary's determination.

Among the arguments the district court presented to support its decision in *Sun Towers* was an argument based on GAAP.  *Id.* at 328.  Under GAAP, stock maintenance costs are recognized as general and administrative expenses.  Thus, the district court argued that these costs were allowable

---

[11]Also, the *Guernsey* court rejected the Secretary's attempted distinction between the Hospital's *reporting* of its costs and the *reimbursement* for those costs.  The Secretary argued that the regulations mandated the use of GAAP only for the Hospital's internal cost *reporting* and that § 233 was sufficient to establish a different accounting system for cost *reimbursement.*  In rejecting this argument, the court noted that the purpose of cost reporting was to enable the Hospital's costs to be known so that reimbursement could be calculated.  For that reason, the court felt that there should be a nexus between the fundamental principles of cost reporting and cost reimbursement.  Accordingly, the *Guernsey* Court found that § 223 was ineffective because "[t]he "nexus' that exists in the regulations between cost reporting and cost reimbursement is too strong ... to be broken by a rule not adopted in accordance with the rulemaking requirements of the Administrative Procedures Act."  *Id.* at 836.  We agree with this statement.

[12]These costs consisted of 1) stock transfer and registration fees;  2) reports to stockholders;  3) stockholders' meetings;  4) legal and accounting fees incurred through the SEC filings and stockholders' meetings;  and 5) public relations aimed at institutional investors.

[13]Medicare does not reimburse all expenses, but only those that are reasonably related to patient care.  *Id.* at 328 n. 25;  42 U.S.C. § 1395x(v)(1)(A).

because 42 C.F.R. § 405.406[14] required GAAP to be applied in determining reasonable costs. *Id.*

We rejected this argument holding that GAAP was not necessarily to be used in determining if a particular cost was allowable. *Id.* at 328-29. In particular, we found that section 405.406 was not designed to determine the "*costs allowable* under the Medicare Act. The regulation is directed at the type of financial data and reports required of providers; it is not a regulation affecting the substantive provisions of the program as to *what constitutes reimbursable costs.*" *Id.* at 329 (quoting *American Medical International, Inc. v. Secretary of Health, Education and Welfare,* 466 F.Supp. 605, 623 (D.D.C.1979), *aff'd* 677 F.2d 118 (D.C.Cir.1981) (emphasis added). Hence, we reversed the decision of the district court and held that the Secretary's determination was neither arbitrary nor capricious. *Sun Towers,* 725 F.2d at 330.

In *Sun Towers,* the issue was *whether* a particular cost was allowable at all. In the case at bar, as it was in the *Guernsey* case, the issue is *when* a cost that was clearly allowable should have been reimbursed. These are different questions and we do not believe that *Sun Towers* speaks to the issue of *when* reimbursement is to be made.

Accordingly, we adhere to our decision in *Sun Towers* as to *whether* a particular cost is allowable. However, we follow *Guernsey* as to *when* advance refunding costs are to be reimbursed.

III.

CONCLUSION

For the reasons stated above, we hold that, under the applicable Medicare regulations, the Hospital was entitled to reimbursement for the full amount of its advance refunding loss in 1987 plus interest. Therefore, we REVERSE the decision of the district court and REMAND this case for a determination of the exact amount of the advance refunding loss and the amount reimburseable under Medicare plus interest from 1987.[15]

---

[14]This section was the precursor to § 413.20.

[15]The Hospital argues that we should hold that the fiscal intermediary's figure of $11,671,393 is correct as to the amount of the advance refunding loss. However, this factual issue was not decided by the PRRB or the Secretary, it was not before the district court, and we do not address it. *See Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381, 1389 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981).