UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 93-7592
_____

STA-HOME HOME HEALTH AGENCY, INC.,

Plaintiff-Appellant,

versus

DONNA E. SHALALA, Secretary of U.S.
Department of Health and Human Services,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

(September 26, 1994)

Before POLITZ, Chief Judge, and DUHÉ and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, CIRCUIT JUDGE:

This appeal, arising out of the denial of Medicare program reimbursement to Sta-Home Home Health Agency, Inc., for that portion of salaries deducted from the pay checks of its employees and retained by it, concerns whether the Secretary of the Department of Health and Human Services reasonably interpreted applicable statutes and regulations to conclude that an employee's gross salary is not a reimbursable "reasonable cost" to the extent that a portion of the salary is never paid to the employee. The district court upheld the Secretary, and we **AFFIRM**.

Sta-Home is a provider of medical services in the Medicare program, pursuant to Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*, which provides health insurance for the aged and disabled. The Medicare program reimburses participating hospitals and other medical providers for the "reasonable cost" of medical services provided to eligible beneficiaries. 42 U.S.C. § 1395f(b)(1).[1] Among other things, for a cost to be reasonable, it must be "actually incurred". 42 U.S.C. § 1395x(v)(1)(A).[2]

Because Sta-Home is a non-profit corporation, its only revenue comes from Medicare or other insurance reimbursements, and private donations.[3] In 1985, in order to generate funds to cover non-reimbursed costs, Sta-Home initiated a program whereby its employees were provided with forms to indicate their willingness to

---

[1] A "home health agency" provides skilled nursing services and other therapeutic services at the patient's residence under supervision by the patient's physician. 42 U.S.C. §§ 1395x(m) & (o).

[2] Providers receive Periodic Interim Payments each month, and these payments should approximate the reimbursable costs. The final decision on reimbursement is based on a detailed cost review prepared by the provider at the end of each year. A provider's fiscal intermediary makes the initial decision whether a particular cost may be reimbursed under the applicable regulations. 42 U.S.C. § 1395h. If the provider is dissatisfied with the intermediary's decision, it can obtain a hearing before the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo. Within 60 days after the PRRB renders its decision, the Administrator of the Health Care Financing Administration may, on its own motion, reverse, affirm or modify the PRRB decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875.

[3] According to the testimony at the PRRB hearing, Sta-Home's Medicare utilization is approximately 94%.

donate a portion of their salaries to Sta-Home.[4]  According to Sta-Home, these contributions were necessary to cover Medicare and Medicaid losses in indigent care -- incurred costs that were not covered by Medicare regulations for reimbursement.[5]

The program was first presented to the employees at a meeting by Vic Caracci, then CEO of Sta-Home, who discussed the poor financial condition of the company and suggested that each employee contribute one hour of their salary every two weeks.  Sta-Home management personnel were stationed outside the meeting with the appropriate forms to be completed by willing employees. Approximately 55% of the employees chose to contribute, and their paychecks were reduced accordingly.  Therefore, the contributed amount never left Sta-Home's account; in other words, it was never paid to the employee.

---

[4]     According to Sta-Home, the donation program was prompted by an employee's suggestion; before its institution, employees had engaged in various fund raising activities, such as bake sales, to generate additional funds for Sta-Home.  Vic Caracci, former Sta-Home CEO, testified that, after the suggestion was made, he contacted the chief auditor of the intermediary and was told that the contribution program would be acceptable.  Caracci was also given a copy of a March 8, 1978, letter from the predecessor to HHS, which stated:

> In any case where a provider agrees to compensate an employee and includes such amount in allowable costs but the employee through agreement or arrangement with the provider receives and retains less than the full compensation with the effect that the provider purposely inflates its costs, then appropriate reduction must be made to the provider's recorded costs to reflect actual costs incurred.

[5]     Sta-Home had received contributions from "key" employees in 1982, and those contributions were disallowed.

At the end of the 1985 fiscal year, Sta-Home sought reimbursement for the gross amount of all employees' salaries, including the portion never paid the employees. The intermediary offset the amount claimed for salaries by the amount of the contribution, so that Sta-Home was reimbursed only the amount actually paid its employees.[6]

Sta-Home sought review of the intermediary's decision by the Provider Reimbursement Review Board (PRRB).[7] Following an evidentiary hearing, the PRRB held in favor of Sta-Home.

The Administrator of the Health Care Financing Administration (HCFA), however, reversed the PRRB decision. The Administrator stated that the evidence established that the employee contributions were used by Sta-Home to pay for costs not covered for Medicare, with the result that, by providing reimbursement for the full amount of salary, Medicare would be "paying for those

---

[6] Sta-Home's cost report for that year reflected that its revenues exceeded expenses by $42,377. According to an anonymous letter dated December 26, 1984, to the Mississippi Health Care Commission, a "concerned employee" claimed that Sta-Home had purchased "13 new cars and a new van [and taken] trips ... to North Carolina, San Francisco, and Dallas to workshops."

[7] Before review by the PRRB, the parties apparently agreed, and then disagreed, to submit the matter to the Blue Cross Association (BCA) for resolution. BCA issued an opinion in favor of Sta-Home, but that opinion was seemingly based on the incorrect assumption that the intermediary had withdrawn its objections to the contributions. The BCA opinion is not before us for review, and neither party has asserted that it is in any way binding on them or this court. Sta-Home apparently emphasizes this incident to suggest that the Secretary or the intermediary engaged in some kind of impropriety with regard to the preparation or disclosure of that opinion, and we reject that suggestion.

nonallowable costs, in violation of the regulations".[8]  Along that line, the Administrator found that, "[i]n substance", the contributions were "reductions or refunds of salary expense" under 42 C.F.R. § 413.98(c), and should properly reduce the expenses for the period in which they are received.  He noted that "contribution schemes such as this are not a generally accepted practice in the region", and that "Medicare has previously noted that such practices ... have the effect of inflating the provider's costs and are not acceptable".  Finally, the Administrator stated that he

> agree[d] with the PRRB that the practice of accepting employee donations through payroll deductions, as in this case, creates a perception of impropriety.  That the amount claimed as salaries fall[s] within the guidelines for "reasonable salaries," is irrelevant.  To the extent they were "contributed" to the Provider, and not paid, they do not represent a "cost incurred."

Accordingly, the Administrator allowed the reimbursement sought for salaries to be offset by the amount of contributions. The district court upheld that decision.

## II.

The Supreme Court recently re-stated the principles guiding our review of the Secretary's decision:

> The [Administrative Procedures Act], which is incorporated by the Social Security Act, commands

---

[8]     Sta-Home misconstrues the Administrator's decision, reading it to hold that the total salary expense was disallowed because expenses were not properly documented.  Employees contributed to Sta-Home to compensate for costs that were incurred but not reimbursed by Medicare for various reasons, including failure to document properly.  In issue is the contribution scheme, not why underlying costs were held not covered by Medicare.  It was because of those non-covered costs that the scheme was implemented.

- 5 -

reviewing courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given "`controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" In other words, we must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." This broad deference is all the more warranted when, as here, the regulation concerns "a complex and highly technical regulatory program," in which the identification and classification of relevant "criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns."

*Thomas Jefferson University v. Shalala*, 114 S. Ct. 2381, 2386-87 (1994) (citations omitted).

In reviewing an agency's construction of a statute which it administers, we must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984). "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect"; however, "if the statute is silent or ambiguous with respect to the specific issue," the court asks whether the agency's answer is based on a "permissible construction", or "reasonable interpretation", of the statute. 467 U.S. at 843-44 & n.9. Sta-Home bears the "difficult burden" of proving that the Secretary's

interpretation of the applicable statutes conflicts with the statutory scheme. *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 325 (5th Cir. 1984).

## A.

Pursuant to the Social Security Act, Sta-Home is to be reimbursed only for "reasonable costs", 42 U.S.C. §1395o, a term defined, in part, as "the cost actually incurred". 42 U.S.C. § 1395x(v)(1)(A). The Secretary maintains that the portions of salaries contributed (returned) to Sta-Home by payroll deduction were not "actually incurred". As stated, if the Secretary's interpretation of the statute is reasonable, we defer to it. *Chevron*, 467 U.S. at 843-44.

It is undisputed that the portion of some employees' salaries designated as a donation to Sta-Home never left its account and was never paid to those employees. Because Sta-Home was never required to pay this portion of the salaries, it was most reasonable for the Secretary to conclude that that cost was not "actually incurred".[9]

Moreover, contrary to Sta-Home's contention, this statutory interpretation is not inconsistent with the applicable regulations. The refunds of expenses regulation referenced by the Administrator, 42 C.F.R. § 413.98(c), provides that

---

[9]   Because we conclude that the total amount of the salaries was not actually incurred, we need not consider whether they were reasonable in amount. We note, however, that the 1978 letter, *see supra* n. 4, does not require the Secretary to prove that the provider inflated salaries, but rather states that an agreement or arrangement between the provider and the employee to return a portion of salary has the effect of inflating salaries.

> refunds of expenses are reductions in the cost of goods or services purchased ... If they are received in the same accounting period in which the purchases were made or expenses were incurred, they will reduce the purchases or expenses of that period....

If the contributed portion of the salary is a "refund", it is clear that it was properly offset under § 413.98(c).

"Refunds" are defined by 42 C.F.R. §413.98(b)(3) as "amounts paid back or a credit allowed on account of an overcollection". Sta-Home asserts, based on an artful grammatical analysis, that the contributions were not refunds because they were not paid back "on account of an overcollection". Under this scenario, however, *any* amount that is paid out by Sta-Home as a reimbursable expense and then is returned by the payee for any reason other than "on account of an overcollection", is not subject to offset. (For example, if a thermometer manufacturer sold Sta-Home a thermometer for $100 and then, pursuant to a separate agreement, *voluntarily* gave Sta-Home $75 of that money back, Sta-Home would be able to be reimbursed $100 by the Medicare program, without any offset, because the $75 was not paid "on account of an overcollection".)

In any event, as noted earlier, the Administrator held that "*[i]n substance*, the employee contributions ... were merely reductions or refunds of salary expense." (Emphasis added.) The cited regulation was just one of several bases relied on by the Administrator for his ruling. The guiding principle is found in the Act; reimbursement is allowed only for "cost[s] actually incurred". The Secretary's interpretation is in keeping with this

statutory directive; that is, refunds are any amounts paid back.[10]

Therefore, the decision is not arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; we are not

authorized to set it aside.

B.

Sta-Home raises additional points attacking supporting bases

looked to by the HCFA for his decision.  Because we uphold that

decision on the ground that the excess (refunded) salary costs were

not "actually incurred", we need not address these issues.[11]  *See*

***Thomas Jefferson University v. Shalala***, 114 S. Ct. 2381 (1994).

III.

Accordingly, the judgment is

**AFFIRMED.**

---

[10]    Another factor supporting this interpretation is that the
Secretary has consistently applied this interpretation.  At the
hearing, there was evidence of two other instances in which
employee contributions had been made; and in both, the Secretary
offset the gross salaries by the amount of contributions.
Interestingly, one of the instances involved Sta-Home.  There was
no proof that the Secretary had ever interpreted the statute or
regulation in an inconsistent manner.

[11]    We note, however, that Sta-Home's reliance on § 604 of the
Provider Reimbursement Manual ("PRM"), which provides that
"[u]nrestricted contributions are not deducted from costs in
computing allowable costs", is misplaced, inasmuch as the PRM
does not carry the force and effect of law, ***Mother Frances
Hospital v. Shalala***, 15 F.3d 423 (5th Cir. 1994), *petition for
cert. filed*, 62 U.S.L.W. 3827 (U.S. May 31, 1994) (No. 93-1907),
and certainly does not displace a reasonable statutory
interpretation.  Further, we reject Sta-Home's contention that it
was denied a "just" administrative process.  This contention,
which was properly construed by the district court as one of
estoppel, is not cognizable in a claim for public funds, ***Office
of Personnel Management v. Richmond***, 496 U.S. 414 (1990); and,
furthermore, the claim of any improper scheme to mislead Sta-Home
as to the allocability of certain costs is without support in the
record.

- 9 -